HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IAN McLENNON SHIPP,

    Plaintiff,

    v.

SAN JUAN COUNTY, a municipal corporation,

    Defendant.

Case No. 2:18-cv-00447RAJ

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

The matter comes before the Court on Defendant's Motion for Summary Judgment and Motion to Dismiss Pursuant to Rule 37(d). Dkt. # 20. For the reasons below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Defendant's Motion to Dismiss.

## II. BACKGROUND

In March 2017, Plaintiff Ian Shipp came to stay with Roger Parks after Shipp was evicted from his own residence. Dkt. # 20; Dkt. # 22-1 at 8. At some point prior, the two became acquainted with each other while living in the same Seattle neighborhood. *Id.* Parks eventually moved to San Juan Island where he was renting an apartment in the town of Friday Harbor. *Id.* After accepting Parks's invitation to stay with him, Plaintiff arrived with nothing but a backpack, a change of clothes, and a guitar. *Id.* He was not added to the lease. *Id.* at 9. After roughly four months, Parks broke his legs in a motorcycle accident

ORDER – 1

and began staying at a different residence with his girlfriend. *Id.* at 8. During that time, Plaintiff remained at the Friday Harbor apartment. *Id.* at 8-9.

Between March and October 2017, the relationship between the two disintegrated to the point where Parks did not feel safe around Plaintiff. *Id.* at 9. In October 2017, Parks received notice that he was being evicted from the Friday Harbor apartment. *Id.* at 10. Given his deteriorating relationship with Plaintiff, Parks requested a civil standby from the San Juan County Sherriff's Department (the "Sherriff's Department") to keep the peace while he gathered his belongings. *Id.*

The move out took place on October 12, 2017. *Id*. Two San Juan County officers, Sherriff Ron Krebs and Deputy Eric Peter, conducted the civil standby and Parks had several friends and co-workers assist him with the move. Dkt. # 21-1 at 9, 20; Dkt. # 22-1 at 8-27. While he did not object to the officers' presence in the apartment, Plaintiff did complain that Parks was taking property that did not rightfully belong to him. Dkt. # 21-1 at 22. Specifically, Plaintiff claimed that Parks left the Friday Harbor apartment for longer than 45 days so his belongings were considered abandoned and now Plaintiff's property. *Id.* at 10. Sherriff Krebs informed Plaintiff that he would have to seek judicial relief for such a claim. *Id.* After roughly half an hour, almost all of Parks's property had been retrieved. *Id.* at 26. Plaintiff gave the officers some ammunition belonging to Parks that had been missed in the collection, at which point Parks and the officers left. *Id.* at 13, 25. Plaintiff remained in the apartment after Parks move out until he was formally evicted the following month. *Id.* at 2, 13.

On October 13, 2017, Plaintiff sent an email to the Sherriff's Department stating that he had been mistreated during the civil standby. Dkt. # 22-1 at 2-4. He claimed that the officers forced their way in, that some of his personal property was stolen, that he was threatened with arrest. *Id.* The Sherriff's Department forwarded Plaintiff's complaint to San Juan County Detective Lach Buchanan, who then contacted the seven witnesses present during the civil standby, including the landlord. *Id.* at 6. None of the witnesses

ORDER – 2

corroborated the claims made by Plaintiff. *Id.* at 8-27.

On March 26, 2018, Plaintiff brought an action against San Juan County (the "County") alleging violations of 42 U.S.C. § 1983, negligence, intentional infliction of emotion distress, conversion, and trespass. Dkt. # 1. Plaintiff filed an amended complaint on April 3, 2018. Dkt. # 10. According to the County, Plaintiff has refused to participate in the discovery process. Defense counsel last communicated with Plaintiff on December 28, 2018 to request a conference after Plaintiff failed to attend his deposition or provide any written discovery responses. Dkt. # 21, ¶¶ 12-21; *id.*, Ex. 18. Plaintiff responded with a profanity-laced tirade directed at his former counsel and others involved with the action. *Id.*, Ex. 9.

### III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine

ORDER – 3

issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987). Because Plaintiff failed to file an opposition to Defendant's motion, the Court accepts unchallenged statements of fact from the Defendant in their entirety. *See Monet v. Chase Home Fin. LLC*, No. 10–CV–00135–LHK, 2011 WL 3740817, at *7 (N.D. Cal. Aug.23, 2011) (noting that, "[i]the absence of an opposition, Rule 56 permits the Court to consider all facts raised by the moving party as undisputed for purposes of the summary judgment motion").

## IV. DISCUSSION

### A. Dismissal as a Discovery Sanction Under Rule 37

In addition to moving for summary judgment, the County seeks dismissal based on Plaintiff's failure to participate in the discovery process. Dismissal is a proper sanction under Rule 37(d) for a serious or total failure to respond to discovery even without a prior motion to compel or court order requiring responses to a discovery request. *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981) (citing *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 35 (3rd Cir. 1979) (dismissal without prior order under Rule 37(d) where party failed to attend deposition)); *Fox v. Studebaker–Worthington, Inc.*, 516 F.2d 989, 993 (8th Cir. 1975) (dismissal without prior order under Rule 37(d) where party failed to respond to interrogatories). However, "due process requires that neither dismissal nor preclusion of evidence that is tantamount to dismissal may be imposed when failure to

ORDER – 4

comply is due to circumstances beyond the recalcitrant's control." *Sigliano*, 642 F.2d at 309. In this case, Plaintiff is a homeless, disabled veteran who claims that he is unable to walk at times. Dkt. # 2; Dkt. # 21-1 at 122. While these limitations do not excuse Plaintiff from participating in the discovery process, the Court is unwilling to conclude that Plaintiff's failure to comply was completely due to circumstances within his control. In considering the public policy for adjudication on the merits, the Court will deny the motion for dismissal under Rule 37. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994); *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

### B. Motion for Summary Judgment

Plaintiff's complaint asserts six causes of action: (1) a Section 1983 claim for allegedly seizing him in violation of the Fourth Amendment; (2) a Section 1983 claim for allegedly searching and seizing his property in violation of the Fourth Amendment; (3) negligence; (4) intentional infliction of emotional distress; (5) conversion; and (6) trespass.

#### i. Section 1983 claims

To state a claim under Section 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Furthermore, public entities can only be held liable under Section 1983 where a constitutional violation occurs pursuant to an expressly adopted official policy or long-standing practice or custom, or where the violation occurs pursuant to the decision of a final policymaker. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). A policy is "'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006) (quoting *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002)). Because Plaintiff's claims here are against San Juan County, and not against any individual officer, *Monell*

ORDER – 5

applies.

As an initial matter, there is no evidence supporting Plaintiff's claim that a constitutional violation occurred. He alleges that he was unlawfully seized without reasonable suspicion or a warrant, and that he suffered an unlawful search and seizure of his property. Dkt. # 10 at 4-5. But the undisputed evidence shows that the officers were present at the Friday Harbor apartment to conduct a civil standby at the request of Parks, the legal tenant. This was announced to Plaintiff. Dkt. # 21-1 at 20-13. Additionally, the evidence before the Court shows that Plaintiff did not object to the officers' presence at the apartment, and that his freedom of movement was not terminated or restrained in any way. *Id*. at 21; Dkt. # 22-1 at 8-27. Once the civil standby was completed, the officers left and Plaintiff remained in the apartment. Dkt. # 21-1 at 13. As for Plaintiff's claim that the County took his property, the only thing the officers took cursory possession of—ammunition belonging to Parks—was given to them by Plaintiff. Dkt. # 21-1 at 13, 25.

It is hard to envision how these facts draw Fourth Amendment scrutiny. For one, the Fourth Amendment's general prohibition against warrantless entry of a person's home does not apply to situations where voluntary consent has been obtained from individual whose property is searched, or from a third party who possesses common authority over the premises. *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990). Moreover, the facts do not show that a reasonable person in Plaintiff's position would have believed they were not free to go about their business. *United States v. Washington,* 490 F.3d 765, 769 (9th Cir. 2007). The officers made clear to Plaintiff that they were conducting a civil standby while Parks retrieved his property. Dkt. # 21-1 at 20-21. Finally, a "seizure" of property does not occur when objects are voluntarily relinquished to the government. *United States v. Sherwin*, 539 F.2d 1, 8 (9th Cir. 1976). As such, there is no evidence to support a claim that Sheriff Krebs or Deputy Peter seized anything belonging in the apartment, let alone anything belonging to Plaintiff.

But even assuming constitutional violations occurred, Plaintiff's Section 1983

ORDER – 6

claims would still fail. He has presented no evidence of any policy, practice or custom, or asserted lack of training to cause the alleged constitutional violations. Therefore, Plaintiff fails to raise a genuine issue of material fact regarding the County's *Monell* liability. *See Waggy v. Spokane County, Washington*, 594 F.3d 707, 713-14 (9th Cir. 2010) (affirming summary judgment for county where plaintiff failed to provide evidence of any express county policy, practice or custom, or evidence to support an inference of any county policy, practice or custom). Plaintiff's Section 1983 claims are therefore **DISMISSED**.

### ii. Negligence

Plaintiff's negligence claim asserts that the County failed to adequately train and supervise Sherriff Krebs and Deputy Peter. Dkt. # 10, ¶¶ 31-33. When the defendant in a negligence action is a governmental entity, "a plaintiff must show the duty breached was owed to him or her in particular, and was not the breach of an obligation owed to the public in general, *i.e.*, a duty owed to all is a duty owed to none." *Munich v. Skagit Emergency Commc'n Ctr.*, 288 P.3d 328, 332 (Wash. 2012). Plaintiff fails to raise a genuine issue of material fact as to whether the County owed him a special duty in training Sherriff Krebs and Deputy Peter.

Even construing Plaintiff's claim as one for negligence supervision does him no better; the record fails to show that the County knew or should have known Sherriff Krebs and Deputy Peter posed a risk or harm to others. *Niece v. Elmview Group Home*, 929 P.2d 420 (Wash. 1997). Because Plaintiff has not produced evidence going toward either theory, his negligence claim is **DISMISSED**.

### iii. IIED claim

The Court will also grant the County's motion on Plaintiff's intentional infliction of emotional distress (IIED or outrage) claim. To establish a claim for IIED, a plaintiff must prove: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 66 P.3d 630 (Wash. 2003). There is no evidence in the record indicating that

ORDER – 7

either Sherriff Krebs or Deputy Peter engaged any extreme or outrageous conduct, or that the officers knew Plaintiff was particularly susceptible to emotional distress. *See Keates v. City of Vancouver*, 869 P.2d 88, 92 (Wash. App. 1994) (officer's conduct did not support IIED claim where he engaged in aggressive yelling, but no physical contact occurred); *see also Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975) (noting that outrage does not extend to mere insults, indignities, threats, annoyances, petty oppressions). Rather, the evidence before the Court demonstrates that Officer Krebs stood in the living room and Deputy Peter stood in the entryway while Parks removed his belongings from the apartment. Dkt. # 21-1 at 21. The County also produced unrebutted evidence that the officers were unaware of Plaintiff's background, including any susceptibility to emotional distress. *Id.* at 26. Given these undisputed facts, Plaintiff's IIED claim is **DISMISSED**.

### iv. Conversion

The evidence in support of Plaintiff's conversion claim is likewise deficient. Conversion is the unjustified, willful interference with a chattel that deprives a person entitled to the property of possession. *Potter v. Washington State Patrol*, 1196 P.3d 691 (Wash. 2008). A willful or unlawful taking does not always amount to conversion. *Repin v. State*, 392 P.3d 1174, 1187 (Wash. App. 2017). There must be some assertion of right or title hostile to the true owner. *Id*. As discussed above, there is no evidence in the record that the County took possession of any property belonging to Plaintiff, or that the County made any assertion of right or title to such property. Therefore, Plaintiff's conversion claim is **DISMISSED**.

### v. Trespass

Plaintiff brings a trespass claim against the County for entering his residence. Dkt. # 1 at 6-7. Plaintiff claims that the County intended to threaten him, deprive him of his residence, and deprive him of his personal property. *Id*. Under Washington law, a person commits a trespass if he intentionally enters the property of another without sufficient privilege or if his actions on the property exceed the scope of that privilege. *Brutsche v.*

ORDER – 8

*City of Kent*, 193 P.3d 110 (Wash. 2008) (recognizing that law enforcement officers could be liable for trespass if they exceed the scope of their privilege to be on another's land by acting unreasonably or in a negligent manner). As stated above, there is no evidence in the record that demonstrates the officers entered the Friday Harbor apartment without sufficient privilege. The officers were present for a civil standby at the request of the lawful tenant. Furthermore, the evidence presented fails to show that the officers engaged in any unreasonable or negligent activity while Parks removed his belongings. Accordingly, Plaintiff's trespass claim is **DISMISSED**.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Defendant's Motion to Dismiss. Dkt. # 20.

DATED this 9th day of April, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 9